**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

PACIFIC CONTROLS, INC.,

        Plaintiff,

    -against-                  No. 19-cv-03428 (CM)

CUMMINS INC.,

        Defendant.

## DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON COUNT I AND II OF PLAINTIFF'S COMPLAINT

McMahon, C.J.:

    Plaintiff Pacific Controls Inc. ("Pacific") has sued Defendant Cummins, Inc. ("Cummins") for breach of contract and various common law torts. The gravamen of the complaint is Plaintiff's assertion that Cummins made misrepresentations, causing Pacific to expend millions of dollars in order to develop technology that Cummins did not ultimately market.

    Pacific asserts that Cummins' misbehavior is actionable under theories of fraud in the inducement (Count I); civil conspiracy to commit fraud in the inducement (Count II); "bad faith" (Count III); and either breach of contract (Count IV) or unjust enrichment (Count V). (Complaint "Compl.," Dkt. No. 1.)

    Cummins filed an Answer on May 8, 2019, denying all allegations that served as the basis for the five causes of actions and asserting a number of affirmative defenses. (Dkt. No. 11.)

    On July 2, 2019, Cummins filed a Motion for Judgment on the Pleadings seeking dismissal of Counts I and II -- fraud in the inducement and civil conspiracy. (Dkt. No. 15.) Plaintiff opposed

the motion and sought leave to amend in the event that the Court were to grant the motion. (Dkt. No. 22.)

For the reasons set forth herein this motion is granted to the extent of dismissing Count II. It is otherwise denied without prejudice to renewal in conjunction with a motion that gives the Court the information it needs to decide whether New Jersey or Indiana law governs Plaintiff's fraud claim alleged in Count I. This issue cannot be decided on the present record.

## Factual Background

The following facts are drawn from the allegations in the Complaint and its attached exhibits, which are presumed true for the purpose of this motion.

Plaintiff Pacific is a New Jersey corporation, with its principal place of business in New Jersey. (Compl., Ex. 2.) Pacific "provides cloud computer technology and related services and products." (*Id.* ¶ 5.)

Defendant Cummins is an Indiana corporation with its principal place business in Indiana. (*Id.* ¶ 2, Ex. 3.) Cummins is one of the world's largest manufacturers of heavy machinery and engines, with customers all around the world, including in New York State, where it also has a place of business. (*Id.* ¶¶ 2, 6.) Its sales exceed fifteen billion dollars per year. (*Id.* ¶ 6.)

### a. Relationship Between the Parties

Beginning as early as 2014, Pacific – a "much smaller company" than Cummins – began developing technology to be used by Cummins in manufacturing engines. (*Id.* ¶¶ 8, 10–11.) Pacific was developing a device to be placed on engines that would "identify maintenance work that was required or would soon be required," and that would report said information through a central location or "command center," using cloud technology. (*Id.* ¶ 13.) Pacific leased a building in Somerset, New Jersey to serve as its command center, and it would provide Cummins with the

information it received at that location.  (*Id.*)  Cummins could then inform its customers of any necessary maintenance on their engines.  In theory, Cummins would be able to grow its business by informing customers when maintenance was necessary and then offering to provide that service. (*Id.* ¶ 13.)

Pacific embarked on this project "expressly for use by Cummins" in its engines (*Id.* ¶ 8) because the company manufactured and sold billions of dollars a year worth of engines.  (*Id.* ¶ 8, 14.)  Pacific alleges that it relied upon this information, as well as the representations of Cummins and its employees, in expending the time, money and effort that went into this project.  (*Id.* ¶¶ 6– 8.)  Cummins allegedly made promises to Pacific regarding anticipated sales, which were "very attractive" to Pacific.  (*Id.* ¶ 8.)  Cummins employees also allegedly represented to Pacific that, if the development were successful, Cummins would use the technology in all or most of the engines it sold around the world.  (*Id.* ¶ 11.)   Indeed, Cummins considered Pacific a "key partner."  (*Id.* ¶ 23.)

Pacific projected that it would realize revenue of over $76 million, with profit of over $34 million in 2016-2018, from the sale of this technology to Cummins.  (*Id.* ¶ 12.)  Cummins was aware of these projections and did not correct or question Pacific, thereby "implicitly approv[ing]" such projections.  (*Id.* ¶ 12, 20.)

Pacific spent over 18 months ("the developmental period") and $14 million developing this technology prior to entering into a formal contractual relationship with Cummins – all "with the consent and knowledge of Cummins."  (*Id.* ¶ 8.)  During that 18 month period, Pacific worked with employees at Cummins on "connected diagnostics" as part of Pacific's technological development.  (*Id.* ¶ 10.)  Also during the developmental period, the technology was "repeatedly tested, inspected, and observed" by members of Cummins' team, including Mr. N. Thomas

Linebarger, the Chairman and CEO. (*Id.* ¶ 9.) Pacific worked with Michael Mattern of the Cummins Technical Advisory Team who ensured that the Pacific products "complied with Cummins' qualification standards." (*Id.* ¶ 16.) Pacific also worked with Sujatha Gopalakrishnan at Cummins to learn about a new initiative on "Connected Software Upgrades," and various other members of the Cummins team. (*Id.* ¶ 15, 23.) Pacific worked with representatives of Cummins "who knew of the arrangements between the parties and of [Pacific's] expectations." (*Id.* ¶ 23.) Cummins provided Pacific with various approvals including technical certifications, geographic compliances, and environmental certifications. (*Id.* ¶ 16.)

In sum, prior to the date when Cummins and Pacific signed a formal agreement, Pacific alleges that Cummins' management and employees "were well aware . . . of the fact that [Pacific] was . . . relying upon [Cummins'] representations when it expended the substantial funds to develop the technology for Cummins' engines." (*Id.* ¶ 11.)

### b. Master Agreement

On October 23, 2015, Cummins' Connected Solutions-Integration Leader, Aparna Venkatraman emailed Pacific stating the following: "We have had an internal review of the test results this afternoon and the whole team unanimously approved that we are ready to go to production with you. Thank you for your hard work and commitment to quality as we went through the testing process . . . ." (*Id.* ¶ 17.)

Following that email, Pacific and Cummins entered into a Master Agreement (hereinafter referred to as "Agreement"), which took effect on January 1, 2016. (*Id.* ¶ 18.) The Agreement contained several provisions relevant to the present case:

1.1    SUPPLIER [Pacific Controls] hereby appoints CUMMINS as an independent authorized reseller and distributor of the Products and the Cloud Services on a worldwide, non-exclusive basis. In its capacity as an authorized

reseller of the Products and Cloud Services, CUMMINS shall market, distribute, accept orders for the sale of Products and Cloud Services from CUMMINS' customers, and provide initial support services for the Products and the Cloud Services in accordance with the terms and conditions of the Agreement.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

2.1    CUMMINS shall, during the Term, use commercially reasonable efforts to develop the Market for the Products and Cloud Services and to sell the Products and Cloud Services to Its customers.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

13.1    This Agreement, together with the attachments and addenda properly executed pursuant to the terms of this Agreement, constitutes the entire and exclusive agreement between THE PARTIES and supersedes all prior oral or written representations or agreements.

14.1    This Agreement shall be construed and governing in accordance with the laws of the State of Indiana, excluding its choice of law statutes . . .

(*Id.* ¶ 18, Ex. A.)  Pacific alleges that it understood these provisions to mean that "Cummins would work to develop the market for Pacific Controls' products and cloud services via widespread advertising to its customers and offering them for sale to all of its customers." (*Id.* ¶ 19.)

After the parties executed the Agreement, Cummins' management set up a meeting with Pacific during which the parties were to discuss "commercial expectations from Cummins." (*Id.* ¶ 20.)  Pacific provided a business plan to Cummins that outlined its expectations based upon the information it had so-far gleaned from Cummins:

Pacific Controls' Partnership with Cummins covers entire installed base of Cummins across the globe. It is expected that Pacific Controls penetration will initiate in North American and Middle Eastern Market in view of direct presence and then spread across all the geographies . . . It is expected that during 2016 & 2017, focus of sales activities will remain North America and the Middle East, which covers more than half the total market. On opportunistic basis, Pacific Controls may address requirements in other markets during the first two years. However, the sales activities in other regions will start towards the end of 2017.

(*Id.* ¶ 21.)  The Sales and Distribution Strategy was outlined as follows:

5

> In order to penetrate the installed base of Cummins, it is crucial that Pacific Controls work very closely with key people in Cummins headquarters, as well as with its regional offices and associates (distributors and dealers) in different geographies . . . .
>
> Primary driving force for the business is leadership team at Cummins Headquarters, who are committed to actively promote "Connected Diagnostics" service across the globe. Cummins will drive sales through its direct sales force as well through 600 distributors and 7,200 dealers in 190 countries across the world. Pacific Controls' business development team will coordinate with their respective counterparts.

(*Id.* ¶ 21 (grammatical errors in original).)

On September 19, 2016, Pacific further expressed to Cummins its understanding of the parties' agreement in an email to Cummins stating:

> Pacific Controls is committed to continuing its operations delivering our IOT managed Services products and solutions business to all our customers globally. Recently have entered into strategic partnership with Microsoft to deliver IOT applications on Azure . . . The Microsoft Partnership enables Pacific Controls to deliver the complete global IT infrastructure as a service for delivering managed services for OEM customers.

(*Id.* ¶ 22.)

After the execution of the Master Agreement, Pacific continued its product development and work with Cummins. (*Id.* ¶ 24.) Pacific spent an additional $20 million on the project after signing the Master Agreement. (*Id.*)

Cummins ultimately failed to "under[take] commercially reasonable efforts to develop the market to its customers for Pacific Controls' products and/or cloud services." (*Id.* ¶ 25). Pacific alleges that "Cummins misrepresented that it would market Pacific Controls' products and services to its customers and defendant Cummins knew that it would not market same while telling Pacific Control otherwise." (*Id.* ¶ 27).

II.    Procedural History

Plaintiff originally filed the Complaint in the Supreme Court of New York County. On April 17, 2019, Defendant removed the case to this Court pursuant to 28 U.S.C. §§ 1332 and 1441. (Dkt. No. 1.)

The Complaint seeks compensatory damages of approximately $34 million, together with punitive damages.

Discussion

**a.  Legal Standard**

"When deciding Rule 12(c) motions for judgment on the pleadings, a court employs the standard that applies to motions to dismiss a complaint under Rule 12(b)(6)." *Sarikaputar v. Veratip Corp.*, 371 F.Supp.3d 101, 103 (S.D.N.Y. 2019) (citing *Walker v. Sankhi*, 494 F.Appx. 140, 142 (2d Cir. 2012) (internal quotation marks omitted). This Court will accept all allegations in the complaint as true and draw all inferences in favor of Plaintiff. *Id.*

Additionally, on a motion for judgment on the pleadings, "the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *Meyers v. City of New York*, No. 1:14-cv-09142 (ALC), 2019 WL 1397186, at *2 (S.D.N.Y. March 28, 2019) (citing *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011)).

"[T]o survive a Rule 12(c) motion, '[t]he complaint must plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (citations omitted).

Finally, when a party is alleging fraud, under Fed. R. Civ. P. 9(b) it must "state with particularity the circumstances constituting fraud." *McCormack v. IBM*, 145 F.Supp.3d 258, 268

(S.D.N.Y. 2015). Rule 9(b) requires plaintiff to: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* (citing *First Hill Partners, LLC v. BlueCrest Capital Mgmt. Ltd.*, 52 F.Supp.3d 625, 637 (S.D.N.Y. 2014) (internal quotation marks omitted).

### b. Choice of Law

The first issue is what law governs each of Plaintiff's claims.

When sitting in diversity, a federal district court applies the forum state's choice of law rules. *See Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 151 (2d Cir. 2013) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 494–97 (1940).

In New York, when a contract contains a choice of law provision, the courts will decide the scope of that clause under New York law. *2002 Lawrence R. Buchalter Alaska Trust v. Philadelphia Financial Life Assurance Co.*, 96 F.Supp.3d 182, 211 (S.D.N.Y. 2015) (hereinafter "*Alaska Trust*") (citing *Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 333 (2d Cir. 2005) (hereinafter "*Finance One*")). The Agreement contains a choice of law provision indicating that the contract "shall be construed and governed" in accordance with Indiana law. (Compl. Ex. A, ¶ 14.1.) New York recognizes such clauses as governing all claims that sound in contract, so plaintiff's claims for breach of contract and unjust enrichment are governed by Indiana law.[1] *See Alaska Trust*, 96 F.Supp.3d at 207–208.

Under New York choice of law principles, however, the fact that the construction of a contract is governed by a particular state's law does not necessarily mean that tort claims arising

---

[1] I really don't know what "bad faith" (Count III) is. It is not a recognized cause of action with which this court is familiar. If it is "bad faith breach of contract" or perhaps "breach of the covenant of good faith and fair dealing" that is inherent in every contract, then it is a contractual claim, governed by Indiana law.

out of or relating to that contract are also governed by the parties' choice of law provision. *Id.* at 211. Therefore, under New York's choice of law rules, Indiana law does not automatically apply to the tort claims for fraudulent inducement and conspiracy.[2]

Unfortunately, neither party has bothered to brief whether the Agreement's choice of law clause is broad enough to encompass tort claims arising out of the contract. The Court has, therefore, looked into the matter for them.

"Under New York law, in order for a choice-of-law provision to apply to claims for tort arising incident to the contract, the express language of the provision must be 'sufficiently broad' as to encompass the entire relationship between the contracting parties." *Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996) (citing *Turtur v. Rothschild Registry Int'l, Inc.*, 26 F.3d 304, 309–10 (2d Cir. 1994)). New York courts are "reluctan[t]" to construe such a clause "broadly to encompass extra-contractual causes of action." *Alaska Trust,* 96 F.Supp.3d at 211 (citing *Finance One*, 414 F.3d at 334). Generally speaking, "tort claims are outside the scope of contractual choice-of-law provisions that specify what law governs construction of the terms of the contract . . . ." *Finance One,* 414 F.3d at 335 (citing *Krock*, 97 F.3d at 645.)

The choice of law provision in this contract is not broadly worded. It states only that the contract itself shall be "construed and governed" by Indiana law – not that any and all claims "relating to" the parties' contractual relationship will be governed by Indiana law. This is similar to the choice of law provision in *Alaska Trust*, which stated that Alaska law governed the

---

[2] Fraud in the inducement is recognized as a tort in New York. *See e.g.*, *First Hill Partners, LLC v. BlueCrest Capital Management Ltd.*, 52 F.Supp.3d 625, 633 (S.D.N.Y. 2014). While conspiracy is not recognized as a stand-alone tort, it can be asserted with a separate underlying tort, which in this case would be fraud. *See e.g.*, *ACR Systems, Inc. v. Woori Bank,* 232 F.Supp.3d 471, 478–79 (S.D.N.Y. 2017).

construction of the contract – This provision was not deemed broad enough to encompass tort claims arising out of the contract. *Alaska Trust,* 96 F.Supp.3d at 211.

When a choice of law provision does not govern torts arising out of a contract, New York looks first to see whether there is a conflict between the possible applicable laws. *Finance One,* 414 F.3d at 331. There appears to be a conflict between New Jersey and Indiana law relating to the issues of fraudulent inducement and conspiracy.

If a conflict exists, New York courts conduct an interest analysis – weighing which jurisdiction has the greatest interest in the litigation. *Alaska Trust,* 96 F.Supp.3d at 217. Having ignored this issue, the parties give the Court little with which to work. Choice of law can be determined at the pleading stage if the relevant facts are sufficiently clear, but is often done after discovery. *Holborn Corp., v. Sawgrass Mutual Insurance Company*, 304 F.Supp.3d 392, 403 (S.D.N.Y. 2018). I cannot decide choice of law at this time because the parties have not provided me with the evidence necessary to make such a determination. *See Speedmark Transp., Inc. v. Mui*, 778 F.Supp.2d 439, 444 (S.D.N.Y. 2011).

Therefore, I cannot grant Defendant's motion to dismiss the tort claims asserted in the complaint unless those claims are clearly insufficient under the law of both Indiana and New Jersey.

They are not.

### c. Defendant's Motion for Judgement on Count I (Fraud in the Inducement) is Denied

#### i. Fraud in the Inducement

Cummins argues that Pacific's claim of fraud in the inducement is barred by various doctrines under Indiana and New Jersey law. Cummins does not, however, argue that this claim is

improperly plead under the heightened pleading requirements applicable to such claims under both Indiana and New Jersey law. *See* Fed. R. Civ. P. 9(b); *State Capital Title & Abstract Co. v. Pappas Business Services, LLC*, 646 F.Supp.2d 668, 681–682 (D.N.J. 2009); *Wabash Power Equipment, Co. v. BTU State Line*, LLC, No. 2:13-CV-202-TLS, 2014 WL 1329411 (N.D. Ind. Mar. 31, 2014). This requirement generally requires a plaintiff to state the "who, what, when, where, and how" the fraud took place. *Wabash*, 2014 WL 1329411, at *11 (citation omitted).

Plaintiff has stated that Cummins misrepresented its intention to market Pacific's products, as Cummins did not market such products. (Compl. ¶¶ 25–27.) Plaintiff has outlined a time frame of its relationship with Cummins, the individual employees with whom Pacific interacted, the general nature of the misrepresentations made by Cummins, and has alleged that such representations were false, because Cummins (1) did not do what it had promised, and (2) knew at the time it made those representations were made that it would not fulfill its obligations. (Compl. ¶¶ 8–10, 12, 15–18, 25–27.)

Under Indiana law, Plaintiff's allegations do not support a claim of fraud in the inducement, so the first cause of action would have to be dismissed if Indiana law controlled. Under New Jersey law, however, Pacific may have a claim of fraud in the inducement, predicated on the $14 million it spent prior to signing its contract with Cummins. But that issue is not amenable to determination before the parties have conducted discovery on the merits.

So the short answer is that the Motion to Dismiss Count One must be denied until (1) the court is able to conduct an appropriate choice-of-law analysis; and (2) if New Jersey law applies, the parties take discovery on the merits.

### 1.  Indiana Law

Under Indiana law, a claim for fraudulent inducement requires "(1) a material misrepresentation of past or existing facts; (2) made with knowledge or reckless ignorance of its falsity; (3) which caused the claimant to rely upon the misrepresentation to the claimant's detriment." *Jones v. Oakland City University*, 122 N.E.3d 911, 918 (Ind. Ct. App. 2019) (citing *Siegal v. Williams*, 818 N.E.2d 510, 515 (Ind. Ct. App. 2004).  The claim cannot be based on "representations of future conduct."  *Id.*  "[A] promise to do a thing in the future, although there may be no intention of fulfilling the promise, cannot form the basis of a fraudulent inducement claim."  *Volvo Trucks North America v. Andy Mohr Truck Center*, No. 1:12-cv-448-WTL-DKL, 2012 WL 4794934, at *2 (S.D. Ind. Oct. 9, 2012); *see also Jones*, 122 N.E.3d at 918 ("Neither may a claim of actual fraud be based on 'broken promises, unfulfilled predictions, or statements of intent which are not executed.'") (citing *Maynard v. 84 Lumber Co.*, 657 N.E.2d 406, 409 (Ind. Ct. App. 1996)).

Indiana also does not recognize fraud based on misrepresentations of one's current intent. *Jones*, 122 N.E.3d at 919.  In *Jones*, the defendant represented to plaintiff during the course of employment negotiations – prior to entering into any contract – that plaintiff's employment would be permanent.  The court found that such a statement, as both a present intention and promise of future conduct, could not support a claim for fraud.  *Id.* at 919–920.

Additionally, when a contract contains an integration clause, Indiana's parol evidence rule will often prevent a party from introducing evidence outside the documents – such as evidence of representations made during negotiations.  *Judson Atkinson Candies, Inc. v. Kenray Associates, Inc.*, 719 F.3d 635, 638–39 (7th Cir. 2013).  Indiana courts have however, recognized that an exception to the parol evidence rule applies "in the case of fraud in the inducement, where a party

was 'induced' through fraudulent representations to enter a contract." *Circle Centre Dev. Co. v. Y/G Ind., L.P.*, 762 N.E.2d 176, 179 (Ind. Ct. App. 2002) (citing *Ruff v. Chapter Behavioral Health Sys. of Northwest Indiana*, 699 N.E.2d 1171, 1174–75 (Ind. Ct. App. 1998)).

Indiana courts later clarified the *Circle Centre* decision by holding that a party can overcome the effect of an integration clause only "if it could show it had a right to rely on the alleged misrepresentations and did in fact rely on them in executing the release and/or the integration clause." *Jones*, 122 N.E.3d at 921 (citing WindWire LLC v. Finney, 977 N.E.2d 401, 405 (Ind. Ct. App. 2012). The court in *Jones* noted that the contract's integration clause did not preclude plaintiffs from introducing evidence that they were fraudulently induced to enter into their employment agreements – noting that "fraud arising out of the negotiations leading up to the execution of a written contract is not merged therein." *Id.* at 921 (citing *Moore v. Harmon*, 142 Ind. 555, 41 N.E. 594, 600 (1895) (internal quotation marks omitted).

Plaintiff has not alleged that Cummins made any affirmative representations prior to contracting that did not make it into the contract itself. Nor is Pacific trying to vary the terms of the contract through representations made prior to entering the Agreement. Cummins argues, correctly, that the only allegedly fraudulent statements were statements about its intent to market Plaintiff's product – and under Indiana law such statements of future intent are not recognized as fraudulent. (Def.'s Mem. of Law in Supp. of Mot. for Judgment on the Pleadings (Def.'s Mot. in Supp."), Dkt. No. 16, at 5.)

Pacific argues in response that Cummins' misrepresentations were of present fact, not future intent – and in the alternative, that it has properly plead constructive fraud under Indiana law. (Pl.'s Mem. of Law in Opp. to Def.'s Mot. ("Pl.'s Opp."), Dkt. No. 22, at 16.)

Plaintiff argues that the misrepresentations were of present fact by stating that Cummins knew at the time the statements were made that it would not honor its promise, making it a present fact. But this very argument was addressed and dismissed by the court in *Jones*. Whether Cummins knew at the time of making the statement that it did not intend to honor its promise does not support a claim for fraud under Indiana law. If Cummins breached a contract, then Plaintiff has a claim for breach.

However, in its brief, Plaintiff contends that it has adequately pleaded a claim of constructive fraud under Indiana law.

"Constructive fraud encompasses several related theories . . . premised on the understanding that there are situations which might not amount to actual fraud but which are so likely to result in injustice that the law will find a fraud despite the absence of fraudulent intent." *Scott v. Bodor, Inc.*, 571 N.E.2d 313, 323–324 (Ind. Ct. App. 1991). The courts across Indiana have handled constructive fraud differently. Some outline a five part test:

> (i) a duty owing by the party to be charged to the complaining party due to their relationship; (ii) violation of that duty by the making of deceptive material misrepresentations of past or existing facts or remaining silent when a duty to speak exists; (iii) reliance thereon by the complaining party; (iv) injury to the complaining party as a proximate result thereof; and (v) the gaining of an advantage by the party to be charged at the expense of the complaining party.

*Strong v. Jackson*, 777 N.E.2d 1141, 1146 (Ind. Ct. App. 2002) (citing *Rice v. Struck*, 670 N.E.2d 1280, 1284 (Ind. 1996); *Demming v. Underwood*, 943 N.E.2d 878, 892 (Ind. Ct. App. 2011) (citations omitted).

Other courts note that "Constructive fraud may be found where one party takes unconscionable advantage of his dominant position in a confidential or fiduciary relationship," *Kalwitz v. Estate of Kalwitz*, 822 N.E.2d 274, 280 (Ind. Ct. App. 2005) and only require

"representations or omissions" made in violation of a duty between the parties. *Wells v. Stone City Bank*, 691 N.E.2d 1246, 1250 (Ind. Ct. App. 1998). Such courts have recognized that claims for constructive fraud may be premised on misrepresentations of future intent. *Kalwitz,* 822 N.E.2d at 280 (citing *Wells*, 691 N.E.2d at 1250). For example, in *Wells v. Stone City Bank*, the court found that defendant's representations regarding future conduct – i.e., that the bank would honor checks from plaintiff's account – could support an action for constructive fraud. *Wells*, 691 N.E.2d at 1250. The court noted that constructive fraud may arise "by operation of law when there is a course of conduct, which if sanctioned by law, would secure an unconscionable advantage, irrespective of the actual intend to defraud." *Id.* (citing *Mullen v. Cogdell*, 643 N.E.2d 390, 401 (Ind. Ct. App. 1994)).

Indiana courts have recognized that the duty element for constructive fraud can arise in a variety of factual scenarios.

However, the complaint as presently pleaded does not assert a claim for constructive fraud, and it is not clear to the Court that such a claim would be viable, given the very real possibility that Cummins owed Pacific no duty under Indiana law. Most scenarios contemplated by Indiana law are inapplicable here.

For example, Pacific cannot establish that it stood in a fiduciary or confidential relationship with Cummins, because "it is well-established that contractual agreements do not give rise to a fiduciary relationship creating a duty and do not provide a basis for a constructive fraud claim." *BloomBank v. United Fidelity Bank F.S.B.*, 113 N.E.3d 708, 722 (Ind. Ct. App. 2018) (citing *Allison v. Union Hosp., Inc.*, 883 N.E.2d 113, 123 (Ind. Ct. App. 2008)).

Pacific might, however, be able to prove that its relationship with Cummins falls into the category "where there is a buyer and a seller, [and] where one party may possess

knowledge not possessed by the other and may thereby enjoy a position of superiority over the other." *Brightpoint Distribution, LLC v. Digital Data Devices, Inc.*, No. 1:16-cv-01202-TWP-DLP, 2018 WL 2045988, at *6 (S.D. Ind. 2018) (citing *Am. Heritage Banco, Inc. v. Cranston*, 928 N.E.2d 239, 247 (Ind. Ct. App. 2010)). A duty can arise in a buyer/seller relationship if "(1) a seller makes unqualified statements to induce another to make a purchase; (2) the buyer relies upon the statements; and (3) the seller has professed to the buyer that he has knowledge of the truth of those statements." *Am. Heritage Banco*, 928 N.E.2d at 247. This kind of duty can form the basis of "legal fraud," which recognizes that "certain conduct should be prohibited because it is inherently likely to create an injustice." *Scott v. Bodor, Inc.*, 571 N.E.2d 313, 323–324 (Ind. Ct. App. 1991).

Indiana courts have also recognized a duty based on a confidential relationship *in fact* – which is seemingly a duty that courts impose when it would be equitable to do so but there exists no legal basis to impose such a duty:

> Confidential relationships as a matter of law include fiduciary relationships such as attorney and client, guardian and ward, principal and agent, pastor and parishioner . . . [and] parent and child, although this list is not exhaustive. In the alternative, a confidential relationship in fact may arise where the facts of a given case show a relation of trust and confidence justifying one in relying thereon, even where there is no legal presumption of such trust. This Court has recognized that, while a relationship of trust and confidence on the particular facts of the case has not been succinctly defined, it exists when confidence is reposed by one party in another with resulting superiority and influence exercised by the other.

*McKibben v. Hughes*, 23 N.E.3d 819, 827 (Ind. Ct. App. 2014) (citing *Callaway v. Callaway*, 932 N.E.2d 215, 223–25 (Ind. Ct. App. 2010) (internal quotation marks omitted). In *McKibben*, the court acknowledged that a relationship of trust and confidence had yet to be clearly defined, but that it exists "when confidence is reposed by one party in another with resulting superiority and influence exercised by the other." *Id.* (citing

*Callaway*, 932 N.E.2d at 225).  The parties in *McKibben* were involved in a caretaking relationship in which plaintiff was suffering from a mental illness and brought an action against defendant for allegedly obtaining the deed to plaintiff's property through fraud.  *Id.* at 823–24.  Here, Pacific argues that it was misled into expending millions of dollars, only to find itself bereft of the customer who had promised to purchase the fruits of its labor.

Whether this set of facts gives rise to a claim of constructive fraud under Indiana law is not a question that can be answered now – the claim is not yet in the case.  But if Indiana law does not govern tort claims in this situation, then there is no sense giving Plaintiff an opportunity to amend its pleading to assert such a claim. Until the choice of law issue is finally determined, the motion for leave to amend must be denied without prejudice.

## 2.  New Jersey Law

Under New Jersey law, fraud in the inducement requires essentially the same elements as it does under Indiana law.  *See RNC Systems, Inc. v. Modern Technology Group, Inc.*, 861 F.Supp.2d 436, 451 (D.N.J. 2012).  An important difference under New Jersey law is that some courts have recognized that, "Where a promise is given and the promisor knows at the time of promising that he has no intention of fulfilling it, the promise will constitute a misstatement of present fact and may support an allegation of fraud."  *Network Commodities, LLC v. Golondrinas Trading Co., LTD.*, Civil No. 11-3119 (NLH/KMW), 2012 WL 1352234, *8 (D.N.J. April 1, 2013) (citing *LoBosco v. Kure Eng'g Ltd.*, 891 F.Supp. 1020, 1031–32 (D.N.J. 1995)).

New Jersey also recognizes the economic loss doctrine, which prevents a party from recovering pure economic losses in tort when such losses stem from a contract.  *Spring Motors Distribs. v. Ford Motor Co.*, 98 N.J. 555, 561, 489 A.2d 660, 663 (N.J. 1985).  There are notable

exceptions to this rule, including an exception for claims of fraud in the inducement. "The economic loss doctrine does not bar claims for fraud in the inducement of a contract because fraud in the inducement is fraud that induces the other party to enter into the contract in the first place." *Peters v. Countrywide Home Loans, Inc.*, Civil Action No. 15-6329 (FLW) (LHG), 2016 WL 2869059, \*4 (D.N.J. May 17, 2016) (internal citations and quotation marks omitted).

However, this exception exists only if the pre-contractual misrepresentations are extrinsic to a contract. A matter is extraneous or extrinsic to a contract if it "breaches a duty 'separate and distinct from the performance' of the agreement's terms." *Montclair State Univ. v. Oracle USA, Inc.*, No. 11-2867 FLW, 2012 WL 3647427, at \*5 (D.N.J. Aug. 23, 2012) (citing *Chen v. HD Dimension Corp.*, Civil No. 10-863, 2010 WL 4721514, at \*8–9 (D.N.J. Nov. 15, 2010).

The key question under New Jersey law is whether the fraud claim is one for fraud in the inducement or fraud in the performance. The former is allowed to proceed. *Bracco Diagnostics, Inc v. Bergen Brunswig Drug Co.*, 226 F.Supp.2d 557, 563. The courts have understood the distinction as follows: there is a "conceptual distinction between a misrepresentation of a statement of intent at the time of contracting, which then induces detrimental reliance on the part of the promise, and the subsequent failure of the promisor to do what he has promised." *Id.* (citing *LoBosco v. Kure Eng'g Ltd.*, 891 F.Supp. 1020, 1032 (D.N.J. 1995).

An additional area of law relevant to Pacific's claim of fraud in the inducement concerns the Agreement's integration clause. Integration clauses often serve to nullify prior representations made by a party before entering into a written contract – what is in the contract stands for the entire agreement between the parties. *RNC Systems*, 861 F.Supp.2d at 454. Additionally, the parol evidence rule will often prevent a party from introducing evidence of oral

representations that occurred prior to the contract that is introduced in an effort to change the written contract. *Id.*

In New Jersey, fraud in the inducement can be an exception to the parol evidence rule when "such evidence is not offered to add or change contract terms but to void the contract altogether." *CDK Global, LLC v. Tulley Automotive Group, Inc.*, Civ. No. 15-3103 (KM) (JBC), 2016 WL 1718100, at *3 (D.N.J. April 29, 2016) (citation omitted). This exception is limited to pre-contractual misrepresentations that are "extraneous to the agreement." *Id.* This requires the same intrinsic/extrinsic analysis that is discussed in connection with the economic loss doctrine.

*Fraud in the Inducement*

Cummins argues that the economic loss doctrine bars Pacific's claim of fraud in the inducement under New Jersey law. Pacific argues that the economic doctrine does not apply to its claim because Cummins' undisclosed intention not to comply with the terms of the agreement is "extraneous" to the Agreement, and so is actionable.

Claims for fraud in the inducement are generally extrinsic because they occur prior to entering into a contract. *See Emerson Radio Corp. v. Orion Sales, Inc.*, No. Civ. A. 95-6455, 2000 WL 49361, at *7 (D.N.J. Jan. 10, 2000) (citing *LoBosco*, 891 F.Supp. at 1032) ("[T]o break a promise is to breach a contractual duty; to falsely state that one intends to honor a promise is a misstatement of present fact and breaches a separate and extraneous duty not to commit fraud."). But this is not always the case. The fraud alleged must be distinct from the obligations that exist in the contract itself. *See Montclair*, 2012 WL 3647427, at *9. New Jersey courts will dismiss a claim for fraud in the inducement if a pre-contractual representation contains the same obligation that can be found in the contract. *See RNC Systems,* 861 F.Supp.2d at 453; *Cudjoe v. Ventures*

*Trust 2013I-H-R by MCM Capital Partners, LLP*, Civ. No. 18-10158, 2019 WL 949301, at *4 (D.N.J. Feb. 26, 2019).

For example, the court in *Montclair* dismissed a claim of fraud in the inducement because each representation that allegedly took place prior to the signing of the contract mirrored some obligation that could be found in the language of the contract. The court dismissed Montclair's claim of fraud in the inducement because it was – in fact – a claim of fraud in the performance of a contract. *Montclair*, 2012 WL 3647427, at *6–10. On the other hand, the court in *G & F Graphic Services, Inc. v. Graphic Innovators, Inc.*, 18 F.Supp.3d 583, 593 (D.N.J. 2014) found that the economic loss doctrine did not bar plaintiff's claim of fraud in the inducement because:

> [T]he alleged facts support an inference that Inserts East would not have contracted to purchase an N400 press given its knowledge of the historical problems with that model, thereby supporting a conclusion that the alleged misrepresentation induced Inserts East to enter into the contract with GI. Such representations are necessarily 'extraneous to the contract,' because they took place prior to the execution of the contract, and, as explained *supra*, no warranty in the contract guarantees that the press being sold is an N400B model.

*Id.* (citations omitted). The representations made prior to entering into the contract were not specifically addressed within the document and plaintiff was allowed to proceed with the claim of fraud in the inducement.

Due to the "fine distinctions this area of law requires," a more detailed factual analysis would be needed in order to answer this question. *See UBI Telecom Inc. v. KDDI America, Inc.*, No. 13-1643 (KSH) (CLW), 2014 WL 2965705, at *16 (D.N.J. June 30, 2014). Unfortunately, until the choice of law decision is made, I have no idea whether such analysis would be warranted.

Cummins makes a final argument that the Agreement's integration clause prevents Pacific from bringing its claim of fraud in the inducement. Pacific argues that an integration clause cannot serve as a complete bar to a claim for fraud. Again, the lack of resolution on the choice of law issue renders this discussion premature.

Similar to the law surrounding the economic loss doctrine, in order to escape the effect of an integration clause, the alleged fraud "must concern a matter not addressed in the agreement; in other words, the subject of the misrepresentation must be extraneous to the agreement." *CDK Global,* 2016 WL 1718100, at *3 (citing *Travelodge Hotels, Inc. v. Honeysuckle Enters., Inc.*, 357 F.Supp.2d 788, 795 (D.N.J. 2005)); *see also RNC Systems*, 861 F.Supp.2d at 454 ("misrepresentations claimed by MTG fall within the ambit of the integration clause . . .[b]oth misrepresentations were made to MTG prior to executing the contract . . . RNC's failure to successfully develop the Multiplex System is in essence a breach of contract claim and not a fraudulent inducement.").

In considering whether an integration clause bars a claim of fraud in the inducement, the court in *CDK Global* looked to what the pre-contract representations purported to say, and then noted that the contract at issue did not specifically address those very topics – as such, "the alleged misrepresentations concern[ed] matters extrinsic to the [contract]. Such allegations could support a claim for fraud in the inducement, as opposed to breach of contract, and therefore would not be barred by the integration clause." 2016 WL 1718100, at *4.

If New Jersey law applies to Count I, there will be time enough to consider whether the merger clause bars Pacific's tort claim.

### d. Defendant's Motion for Judgment on Count II (Civil Conspiracy) is Granted

Count II – Civil Conspiracy – is premised on the actions of both Cummins and its employees in conspiring to defraud Pacific.

Pacific alleges that "Various employees of Cummins acted in concert and *conspired with Cummins* to commit fraud in the inducement and perform the contract in bad faith. Various employees amongst themselves *on behalf of Cummins* orchestrated a common scheme and came to an agreement to defraud the Plaintiff . . . Such actions constitute a civil conspiracy for which Cummins is liable both as a conspirator and since it is liable for the actions of its employees." (Compl. ¶¶ 33-34, 39) (emphasis added).

This claim, unlike Count I, can be dismissed now. Under both Indiana and New Jersey law, a corporation cannot conspire with its employees when they are acting in their employment capacity – a so-called "bathtub conspiracy" – which is exactly what is alleged by Pacific. *See Elder Care Providers of Indiana, Inc., v. Home Instead Inc*., 1:14-cv-01894-SEB-MJD, 2015 WL 13632962, at *4–5 (S.D. Ind. Dec. 10, 2015); *Ekanem v. Health & Hosp. Corp. of Marion Cty., Indiana*, No. IP 77-224-C, 1980 WL 273, at *23 (S.D. Ind. Nov. 28, 1980); *Ramsey v. Glaser*, No. 1:18-cv-01543-JMS-TAB, 2018 WL 4846299, at *11 (S.D. Ind. Oct. 5, 2018) ("[The intra-corporate conspiracy] doctrine holds that a conspiracy cannot exist between members of the same entity."); *see also Sunkett v. Misci*, 183 F.Supp.2d 691, 722 (D.N.J. 2002); *Mu Sigma, Inc. v. Affine. Inc.*, No. 12-1323 FLW, 2014 WL 1217961, at *6 (D.N.J. Mar. 24, 2014).

In a civil conspiracy, a corporation cannot conspire with its officers, the exception being if the officers are "acting outside the course and scope of their employment." *Sunkett*, 183 F.Supp.2d at 722 (citing *Heffernan v. Hunter*, 189 F.3d 405, 412 (3d Cir. 1999)). Pacific, admitting that Cummins cannot conspire with itself, tries to salvage Count II by arguing that

Cummins "has not denied that it has *not* authorized its' employees to act in said manner on its behalf." (Pl.'s Opp. at 23 (emphasis in original).) This is no argument: Pacific explicitly pleads that the employees were acting on behalf of Cummins. (Compl. ¶¶ 33-34.)

The motion for judgment on Count II (Civil Conspiracy) is granted.

## CONCLUSION

Based on the foregoing, Defendant's motion for judgement on the pleadings is GRANTED as to Count II, which is dismissed, and DENIED without prejudice as to Count I, subject to completion of choice of law analysis. Plaintiff's request for leave to amend is DENIED WITHOUT PREJUDICE; we will take that up once the choice of law issues surrounding Count I are resolved. The Clerk of Court is respectfully directed to remove Dkt No. 15 from the Court's list of open motions.

Dated: December 13, 2019

_____
Chief Judge

BY ECF TO ALL COUNSEL